# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **JONATHAN JONES, as the Durable Power of Attorney for JOHN JONES,** Address: 6064 Natural Falls Drive Ozark, MO 65721 **Plaintiff,** v. **NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC** <u>Serve Registered Agent</u> National Registered Agents, Inc. 120 South Central Avenue Clayton, MO 63105 **NATIONAL HEALTH CORPORATION** <u>Serve Registered Agent</u>: Trevor Layland 100 E Vine St Ste 1400 Murfreesboro, TN 37130-3773 USA 6651 N. Drake Avenue Lincolnwood, IL 60712 **NATIONAL HEALTHCARE CORPORATION** <u>Serve:</u> National Registered Agents, Inc. 1209 Orange Street Wilmington, DE 19801 **Defendants.** | Case No. JURY TRIAL DEMANDED |

## PLAINTIFFF'S COMPLAINT

The Plaintiff, by and through undersigned counsel, submit this Complaint for Damages

against the above-named Defendants, and in further support, states and alleges as follows:



*Filing of Steele Chaffee*

1

## PLAINTIFF

1. John Jones ("Resident") developed an avoidable pressure on or about September 25, 2022, at Nhc Healthcare-Springfield Missouri LLC Healthcare and Rehabilitation Center, a Missouri skilled nursing facility located at 2800 South Fort Avenue, Springfield, MO 65807 ("The Facility).

2. Plaintiff, Jonathan Jones, is, and always relevant hereto, an adult over the age of 21 and a citizen of the state of Missouri.

3. John Jones is and was a citizen of the state of Missouri at all relevant times.

4. Jonathan Jones is the Durable Power of Attorney for John Jones.

5. Durable Power of Attorney empowers him to pursues this lawsuit on John Jones' behalf.

## DEFENDANTS

6. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

## NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC

7. At all times relevant, NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC was a Missouri limited liability company and owned, operated, managed, maintained, and/or controlled, in whole or in part, and did business as NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC ("Facility" or "the Facility") which is a Missouri licensed nursing home located at 2800 South Fort Avenue, Springfield, MO 65807.


Filing of
Steele Chaffee

2

8. As such, NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.

9. Consequently, NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.

## NATIONAL HEALTHCARE CORPORATION

10. NATIONAL HEALTHCARE CORPORATION was incorporated in Delaware and its principal place of business is in Tennessee.

11. NATIONAL HEALTHCARE CORPORATION has been always relevant to this action a citizen of Delaware and Tennessee.

12. NATIONAL HEALTHCARE CORPORATION was substantially engaged in the leasing, control, management, staffing, fiscal budgeting, oversight, risk management, regulatory compliance, implementation and enforcement of policies and procedures, consultation with and/or operation of the licensee, NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC by exercising final authority over (1) staffing budgets; (2) the development and implementation of nursing policies and procedures; (3) the hiring and firing of the administrator; (4) appointing the governing body that is legally responsible for establishing and implementing policies regarding the management and operation of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.

13.     These actions and decisions had a direct impact on the care provided to all residents including Resident and caused the injuries at issue in this lawsuit.

14.     Moreover, NATIONAL HEALTHCARE CORPORATION operated, managed, maintained, and/or controlled NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC by binding the nursing home to contracts with related parties – as defined by the Centers for Medicare and Medicaid Services – for dollar amounts that far exceeded the fair value of those services and resulted in funds being diverted out of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC that could and should have been utilized to hire enough nursing staff.

15.     These actions and business decisions had a direct impact on the care provided to all residents including Resident and caused the injuries at issue in this lawsuit.

16.     Consequently, NATIONAL HEALTHCARE CORPORATION owed a duty to Resident to use reasonable care for Resident's safety while under his care and supervision at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.

### NATIONAL HEALTH CORPORATION

17.     NATIONAL HEALTH CORPORATION was incorporated in Tennessee and its principal place of business is in Tennessee.

18.     NATIONAL HEALTH CORPORATION has been always relevant to this action a citizen of Tennessee.

19.     At all times relevant to this action, NATIONAL HEALTH CORPORATION, and/or individuals or entities acting on its behalf, operated, managed, maintained, and/or controlled, in whole or in part, NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.



*Filing of*
*Steele Chaffee*

4

20.     NATIONAL HEALTH CORPORATION, and/or individuals or entities acting on its behalf, operated, managed, maintained, and controlled NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC by exercising final authority over:

a.  Staffing budgets;

b.  The development and implementation of nursing policies and procedures;

c.  The hiring and firing of the administrator; and

d.  Appointing the governing body that is legally responsible for establishing and implementing policies regarding the management and operation of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.

21.     These actions and business decisions had a direct impact on the care provided to all residents including Resident.

22.     Consequently, NATIONAL HEALTH CORPORATION owed a duty to Resident to use reasonable care for Resident's safety while under its care and supervision at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC and breached said duty for all the reasons stated in this Complaint.

## DEFENDANTS' JOINT ENTERPRISE/VENTURE

23.     Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

24.     Defendants NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, NATIONAL HEALTHCARE CORPORATION, and NATIONAL HEALTH CORPORATION ("Joint Venture Defendants") were engaged in a joint venture in that:

a.  The Joint Venture Defendants had an agreement, express and/or implied, among the members of the group to operate NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, a Missouri licensed nursing home;



b. The Joint Venture Defendants had had a common purpose to operate NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, a Missouri licensed nursing home;

c. The Joint Venture Defendants had a community of pecuniary interest in the operation of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, a Missouri licensed nursing home; and

d. The Joint Venture Defendants had had an equal right to a voice in the direction of the operation of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, a Missouri licensed nursing home.

25. There has been always a close relationship between the Joint Venture Defendants relevant.

26. Because of the joint venture, the Joint Venture Defendants owed a joint duty to Resident to use reasonable care for their safety while under their care and supervision at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.

## JURISDICTION AND VENUE

27. Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

28. The only member of the limited liability company NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC is NATIONAL HEALTHCARE CORPORATION.

29. NATIONAL HEALTHCARE CORPORATION is a citizen of Delaware and Tennessee

30. Thus, NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC is a citizen of the states of Delaware and Tenessee by way of its member being citizens of the states of Delaware and Tennessee.



31.     NATIONAL HEALTH CORPORATION is a Tennesse corporation with its principal place of business in Tennesse.

32.     Thus, NATIONAL HEALTH CORPORATION is a citizen of the state Tennessee

33.     Jonathan and John Jones are each citizens of Missouri.

34.     Therefore, Plaintiff brings his claims contained in the Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332(a)(1), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

35.     Pursuant to RSMo § 506.500.1(3), defendants, purposefully availed themselves of the protections and/or benefits of the laws in Missouri by committing tortious acts within the state including, but not limited to, failing to ensure that NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision, thereby making jurisdiction proper in this Court.

36.     A substantial part of the events or omissions giving rise to the claims described in the Complaint occurred in this District of Missouri, thereby making venue proper in this Court.

AGENCY

37.     Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

38.     The acts hereinafter described were performed by the agents, representatives, servants, and employees of Defendants and were performed either with the full knowledge and consent of Defendants, and/or were performed by their agents, representatives, servants, or employees during the scope of their agency, representation, or employment with the Defendants.

39.     Furthermore, the acts hereinafter described as being performed by the agents, representatives, servants, or employees of Defendants were performed or were supposed to be performed on behalf of and/or for the benefit of Resident.

## FACTUAL BACKGROUND

40.     Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

### Defendants' Treatment of Resident

41.     Upon admission to NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, Resident was at risk for developing skin breakdown, and pressure ulcers.

42.     Failure of NHC Healthcare-Springfield Missouri LLC staff to offload John Jones' sacral/coccyx and heels areas caused development and progression of pressure injuries in these areas. The pressure applied to the heels and sacrum/coccyx area exceeded the tissue tolerance to pressure.

43.     Skin subjected to prolonged contact with urine and feces is more likely to break down.

44.     The sacral/coccyx pressure injury became infected, requiring hospitalization and antibiotic treatment. Sacral pressure injury infection resulted in severe sepsis/bacteremia.


Filing of
Steele Chaffee

8

45.     None of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC staff, nor any other defendants conducted a Resident assessment to identify Resident's risk of developing skin breakdown.

46.     Despite Resident's risk, upon information and belief none of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC staff, nor any other defendants implemented a Care Plan to address Resident's risk of developing a pressure ulcer nor did they implement a turning and repositioning program to offload the pressure on Resident's skin.

47.     Upon information and belief, none of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC staff:

    a.   Properly assessed Resident's developing skin breakdown or pressure ulcers;

    b.   Implemented or provided the appropriate interventions to prevent Resident from developing a pressure ulcer or allowing Resident's pressure ulcer to get worse, including turning or repositioning Resident to offload the pressure on Resident's skin;

    c.   Monitored or evaluated Resident's Care Plan to see if the interventions prescribed were working; or

    d.   Monitored Resident's urine, skin condition, including Resident's pressure ulcer or measure its size during this time frame.



48.     Upon information and belief, at no point while Resident was a resident at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC did any of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, NATIONAL HEALTHCARE CORPORATION, NATIONAL HEALTH CORPORATION or any other staff member ever provide any sort of in-service training or clinical education to NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC staff regarding the assessment, prevention, use of interventions, monitoring, and reporting of pressure ulcer or skin breakdown in residents like Resident.

49.     Upon information and belief, at no point while Resident was a resident at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC did any of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, NATIONAL HEALTHCARE CORPORATION, and NATIONAL HEALTH CORPORATION or any other staff member ever implement the appropriate policies and procedures at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC regarding the assessment, prevention, use of interventions, monitoring, and reporting of pressure ulcer in residents like Resident.

50.     Upon information and belief, while Resident was a resident at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC did not have an adequate number of staff working daily at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC to meet Resident's needs, perform the interventions required to prevent Resident's avoidable pressure ulcer or prevent the progression of Resident's pressure ulcer, or monitor and adequately supervise Resident's condition.

### Cost Reporting & Staffing Information

51.     Nursing facilities, like NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, are required to submit an annual "Cost Report" to CMS, known as "CMS Form 2540-10". The cost report is a financial report that identifies the cost and charges related to healthcare treatment activities in a particular nursing facility.

52.     Included with the cost reports are extensive details as to how much money the nursing facility spent on RNs, LPNs, and CNAs. The cost reports reflect the patient census, hours paid, and the hourly rate that the nursing facility paid each category of direct caregivers.

53.     By dividing the paid hours by the patient census in the facility it is possible to determine how many hours the nursing facility paid for each category of direct caregivers per resident per day for the period covered by that cost report. This number is referred to as the "reported HPPD".

54.     CMS allows the facilities to include all paid hours in the "reported HPPD." Thus, that number does reflect true direct care hours, but is inflated because "hours paid" includes sick pay and vacation pay both of which reduce the amount of actual HPPD provided by caregivers to residents in nursing facilities.

55.     NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC was also required to report quarterly staffing information through the CMS "Payroll Based Journal" (PBJ) program.

56.     To determine more accurate direct-care hours, it is necessary to examine the data that nursing facilities use to track the number of hours their employees work. This information is easily accessed through reports that are commonly referred to as "Time Detail Reports", "Punch Detail Data Reports", or some other similarly named report depending on the time-keeping system used by the nursing facility.

57.     The more detailed Punch Detail or time records will note vacation or sick time paid and thus, reveal actual hours worked in the facility. This information reveals a more accurate direct care number and allows the calculation of the actual HPPD for any period including a year, a quarter, a month, or a day.

58.     Upon information and belief, the staffing levels reported by NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC skilled nursing & therapy for the period Resident was at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC were below the CMS expected levels derived from the MDS RUG rates which reflect actual acuity and not simply a resident census.

59. Upon information and belief, the staffing levels reported by NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC skilled nursing & therapy for the period Resident was at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC were below the CMS expected levels derived from the MDS RUG rates which reflect actual acuity and not simply a resident census.

**Undercapitalization/Underfunding at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC**

60. NATIONAL HEALTH CORPORATION, NATIONAL HEALTHCARE CORPORATION, and NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC had a duty to provide financial resources and support to NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC in a manner that would ensure that each of their residents received the necessary care and services and attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with their residents' comprehensive assessments and plans of care.

61. NATIONAL HEALTH CORPORATION, NATIONAL HEALTHCARE CORPORATION, and NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC had a duty to provide sufficient financial resources to ensure there was enough properly trained and supervised staff to meet the needs of their residents.

62. Upon information and belief, NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC had no autonomy to decide their own financial course, including no authority to determine how much staff they could provide or what resources were available to the staff.

63. Upon information and belief, no individuals at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC are involved in decision making about the financial operations or what its resources were and where they would be spent.



*Filing of
Steele Chaffee*

13

64. Transactions directed by NATIONAL HEALTHCARE CORPORATION, and NATIONAL HEALTH CORPORATION left NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC with insufficient cash to provide sufficient qualified staff to meet the individual needs of the residents in their NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC during Resident's time there.

## LEGAL BASIS FOR NATIONAL HEALTHCARE CORPORATION, AND NATIONAL HEALTH CORPORATION'S LIABILITY

### Joint Venture/Enterprise

65. NATIONAL HEALTHCARE CORPORATION, and NATIONAL HEALTH CORPORATION are collectively referred to herein as the "Corporate Defendants."

66. The Corporate Defendants directed, operated and managed the day-to-day functions of their nursing facilities – including NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC – by developing and implementing policies, practices and procedures affecting all facets of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, including resident care.

67. These policies manipulate and control the physical and financial resources and prohibit decision making at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC level.

68. This directly affects resident care by determining things such as what type and quality of nourishment is available for residents; what safety measures may and may not be used depending upon cost; the integrity of the building itself; and most importantly, how much staff is available to provide resident care and how well trained and supervised are the staff to meet the needs of the residents.


*Filing of Steele Chaffee*

14

69.     These policies and practices were developed and implemented without regard to the needs of the residents and, in fact, mandated the reckless disregard for the health and safety of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC's residents.

70.     The Corporate Defendants affirmatively chose and decided to establish such operations and demand they be implemented.

71.     Upon information and belief, such operations included, *inter alia*, the following dangerous policies and practices: (a) the aggressive recruitment and admission of high acuity patients to increase the patient census when Defendants had already chosen to understaff NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC and continually maintain a staff that were not qualified nor competent to provide the care required by state law, regulations and minimum standards of the medical community; and (b) the decision to retain residents whose needs exceeded the qualification and care capability of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC's staff.

72.     The Corporate Defendants consciously chose not to implement safety policies, procedures and systems which would ensure that: (a) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (b) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

73.     The Corporate Defendants, conduct themselves in a manner which indicates a joint venture/enterprise amongst them, to wit:

   a.   The shared interest in the operation and management of nursing facilities;

   b.   The express and implied agreements amongst them to share in the profits and losses of such venture/enterprise; and


Filing of
Steele Chaffee

15

c. The obvious actions taken showing the cooperation in furthering the venture/enterprise operating and managing nursing facilities.

74.     Missouri law recognizes a joint venture/enterprise where the parties alleged to be partners in such venture/enterprise share a common interest in the property or activity or the joint venture; maintain agreements, either express or implied, to share in profits or losses of the venture/enterprise; and express actions or conduct showing cooperation in the project of the venture/enterprise.

75.     The Corporate Defendants share a common interest in the operation and management of nursing facilities, including NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC; maintain agreements to share in the profits or losses of the operation of nursing facilities described herein; and operate daily evincing conduct which indicates their cooperation in the venture of operating and managing nursing facilities for profit.

76.     The Corporate Defendants and NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC took direct, overt and specific actions to further the interest of the joint enterprise.

77.     These actions were taken through a joint venture/enterprise or through the Corporate Defendants and NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC's officers, directors, managers and or employees.

78.     The Corporate Defendants had an equal right to share in the profits and to bear liability for, the joint venture/enterprise.

79.     Further, because the Corporate Defendants and NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC were dominated by each other, these entities had an equal right to direct or control their venture, as well as to direct or control the operation and management of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.

### Direct Participation/Individual Actions

80.     The Corporate Defendants were always material to this lawsuit in the business of managing, owning and operating a network of nursing homes throughout the State of Missouri. One such nursing home was NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC where Resident was admitted for care and treatment.

81.     At all times material to this lawsuit, the Corporate Defendants were fully aware that the delivery of essential care services in each of their nursing homes – including NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC – hinged upon three fundamental fiscal and operational policies which were dictated by their choices on establishing and implementing such policies: (1) the determination of the numbers and expenditures on staffing levels; (2) the determination of the census levels within the nursing home; and, (3) payor mix.

82.     At all times material, the Corporate Defendants made critical operational decisions and choices which manipulated and directly impacted NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC's revenues and expenditures.  More particularly, the Corporate Defendants determined:

    a.  The number of staff allowed to work in their chains of nursing homes including NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC;

    b.  The expenditures for staffing at the nursing homes including NHC HEALTHCARE-

SPRINGFIELD MISSOURI LLC;

   c.  The revenue targets for each nursing home including NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC;

   d.  The payor mix, and, census targets for each nursing home including NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC;

   e.  Patient recruitment programs and discharge practices at each nursing home including NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.

83.    All cash management functions, revenues and expenditure decisions at the nursing home level – including NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC – were tightly managed, directed, and supervised by the Corporate Defendants.

84.    It was the choices made by the Corporate Defendants which directly fixed the circumstances in the facilities and the level of care that could, and was, provided at the homes, including NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.

85.    The Corporate Defendants formulated, established and mandated the application and implementation of the policies regarding the staffing levels and expenditures, the census levels, and payor mix.

86.    The census edicts, marketing and admission practices, and resident discharge policies designed and mandated by the Corporate Defendants were implemented and such application was carefully supervised and enforced.

87.    Following the mandates, NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC functioned in accordance with them, filling empty beds, recruiting high acuity patients, and maintaining a census level and staffing level established and enforced as the Corporate Defendants deemed appropriate.


*Filing of Steele Chaffee*

18

88. Accordingly, such manipulation by the Corporate Defendants as to staffing and census were motivated by the financial needs of the Corporate Defendants and NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC as opposed to the acuity levels and needs of the residents as dictated by state and federal laws and regulations.

89. Instead of abiding by their duty to care for the residents, the Corporate Defendants chose to be guided by financial motivation which was simply to increase revenues while restricting and/or reducing expenses.

90. The Corporate Defendants, therefore, directly participated in a continuing course of negligent conduct, requiring NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC to recruit and retain heavier care, higher pay residents to NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC even though the needs of the patient population far exceeded the capacity of staff.

91. At the same time, the Corporate Defendants chose to design, create, implement and enforce operational budgets at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC which dictated the level of care that could be provided and therefore deprived residents care, creating widespread neglect.

92. In so doing, the Corporate Defendants disregarded, superseded, and violated the duties and responsibilities imposed on a licensed nursing home, in this case NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, by the State of Missouri, and the federal government.

## Corporate Malfeasance

93.    The Corporate Defendants consciously chose not to implement safety policies, procedures and systems which would ensure that: (1) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (2) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

94.    Accordingly, the Corporate Defendants, by their operational choices and decision making, and to satisfy their desire to grow profits, created a dangerous condition that caused harm to residents.

95.    These choices to establish and implement such policies and the conscious decision not to implement corrective actions or procedures disregarded the duties which the State of Missouri and federal government imposed upon the Corporate Defendants and NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.

96.    Because the staffs were below necessary levels, and because the staffs that were present were not properly qualified or trained, the residents at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC including Resident, failed to receive even the most basic care required to prevent catastrophic injury.  This negligence and resulting injuries ultimately led to and caused Resident's injuries as described above.

97.    During Resident's residency at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, Resident sustained physical injuries and died, as described in more detail above, because of the acts, omissions, decisions, and choices made by the Corporate Defendants in operating NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.


*Filing of Steele Chaffee*

98.     During Resident's residency at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, the Corporate Defendants negligently failed to provide and/or hire, supervise and/or retain staff capable of providing Resident with a clean, safe and protective environment, and that, as a result of this failure, Resident suffered neglect, abuse, severe personal injuries, conscious pain and suffering, and deterioration of Resident's physical condition as further described above.

99.     The Corporate Defendants manage, operate and direct the day-to-day operations of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC and these Corporate Defendants are liable for this direct involvement in the operations of such NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC. These Corporate Defendants are therefore liable to the Plaintiff for the neglect of and injuries to Resident.

100.    NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC and these Corporate Defendants have been named as Defendants in this lawsuit for their individual and direct participation in the torts and causes of action made the basis of this lawsuit, having:

    a.  Chosen to disregard the duties and responsibilities which NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, as a licensed nursing home, owed to the State of Missouri and its residents;

    b.  Created the dangerous conditions described by interfering with and causing NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC to violate Missouri statutes, laws and minimum regulations governing the operation of said nursing home;

    c.  Superseding the statutory rights and duties owed to nursing home residents by designing and mandating dangerous directives, policies, management and day to day operation of NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC;

    d.  Caused the harm complained of herein; and

    e.  Choosing to disregard the contractual obligations owed to the State of Missouri and the Federal Government to properly care for the residents in exchange for payment of funds for such care.


*Filing of*
*Steele Chaffee*

21

## Missouri Omnibus Nursing Home Act Against All Defendants

101.    Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

102.    The cause of action set forth in this Count I is brought under the Omnibus Nursing Home Act, Mo. Rev. Stat. § 198.003, et seq., and more specifically by reason of statutorily created private cause of action pursuant to Mo. Rev. Stat. § 198.093.

103.    On March 19, 2023, the Plaintiff's counsel sent the Missouri Attorney General written complaints on behalf of John Jones against the owners, operators and agents of the owners and operators of Nhc Healthcare-Springfield Missouri LLC Center pursuant to the Missouri Omnibus Nursing Home Act of 1979, specifically pursuant to Sec. 198.093 Revised Missouri Statute, 1979, regarding the actions at issue in this lawsuit.

104.    The attorney general failed to initiate a legal action within sixty days of receipt of the complaint.

105.    Jonathan Jones, on behalf of Jon Jones, is now filing this cause of action pursuant to Missouri Omnibus Nursing Home Act of 1979, specifically pursuant to Sec. 198.093.

106.    As the owners and operators of a long-term skilled care nursing facility licensed by the State of Missouri, defendants were always material hereto subject to the provision of the Omnibus Nursing Home Act, Section 198.003, et seq.

107.    During his residency,  John Jones was subject to abuse and neglect at the hands of defendants and their agents, servants and/or employees as stated above.

108.    The abuse and neglect by defendants and their, servants and/or employees was physically and mentally tortuous causing great physical pain and suffering and emotional distress to John Jones.

109.    The abuse and neglect occurred in violation of the Omnibus Nursing Home Act, § 198.088, declaring that, "1. Every facility, in accordance with the rules applying to each particular type of facility, shall ensure that: (1) There are written policies and procedures available to staff, residents, their families or legal representative and the public which govern all areas of service provided by the facility . . . (2) Policies relating to admission, transfer, and discharge of residents shall assure that: . . . (b) As changes occur in their physical and mental condition necessitating service or care which cannot be adequately provided by the facility, residents are transferred promptly to hospitals, skilled nursing facilities, or other appropriate facilities; . . . (6) Each resident admitted to the facility: . . . (g) Is free from mental and physical abuse . . . (i) Is treated with consideration and respect, and full recognition of his dignity and individuality, Including privacy and treatment In caring for his personal needs . . .

110.    John Jones was a member of the class of persons intended to be protected by the enactment of the statutes.

111.    The injuries sustained by John Jones were the type of injuries that the regulations were enacted to prevent.

112.    As a direct and proximate result of defendants' failure to fulfill their responsibility of care and protection to John Jones as imposed by the statutes attendant to defendants' privilege


*Filing of*
*Steele Chaffee*

23

of ownership and operation of a nursing home business, John Jones incurred medical expenses and suffered severe pain, anxiety, and mental distress.

113.    The actions and omissions were intentional, willful, malicious, and outrageous, entitling the John Jones to an award of reasonable attorneys' fees pursuant to Section 198.093(3).

WHEREFORE, John Jones prays for judgment on Count I against defendants for a sum that a jury determines to be fair and reasonable, for medical expenses and punitive damages, together with the costs and expenses herein occurred, attorneys' fees and for such other relief as this Court deems just and proper.

## COUNT II - (Alter Ego v. Defendants NATIONAL HEALTHCARE CORPORATION and NATIONAL HEALTH CORPORATION)

114.    Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

115.    For the purposes of this Count Defendants NATIONAL HEALTHCARE CORPORATION, and NATIONAL HEALTH CORPORATION are hereinafter referred to as the "Alter Ego Defendants".

116.    NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC ("Subsidiary") are so dominated by the Alter Ego Defendants that the Subsidiary is a mere instrument of the Alter Ego Defendants and are indistinct from the Alter Ego Defendants.

117.    In fact, the Subsidiary is controlled and influenced by the Alter Ego Defendants in that the Alter Ego Defendants exercised complete control and domination over the Subsidiary's finances and business practices.

118.    Specifically, the Alter Ego Defendants' complete control and domination over the Subsidiary caused NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC's undercapitalization and understaffing while Resident was at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC.

119.    Upon information and belief, the Alter Ego Defendants' complete control and domination over the Subsidiary caused the Subsidiary to operate at a loss during the years of 2020, 2021, and 2022.

120.    Upon information and belief, the Alter Ego Defendants' complete control and domination over the Subsidiary caused the Subsidiary's liabilities to exceed its assets by during the years 2020, 2021, and 2022.  Specifically:

    a.   The Alter Ego Defendants own all or most of the capital stock of the Subsidiary;

    b.   The Alter Ego Defendants and the Subsidiary have common directors or officers;

    c.   The Alter Ego Defendants finance the Subsidiary;

    d.   The Alter Ego Defendants subscribe to all the capital stock of the Subsidiary;

    e.   The Alter Ego Defendants caused the incorporation of the Subsidiary;

    f.   NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC has grossly inadequate capital;

    g.   The Alter Ego Defendants pay the salaries and other expenses or losses of the Subsidiary;

    h.   The Alter Ego Defendants use the property of the Subsidiary as its own; and

    i.   The directors or executives of the Subsidiary do not act independently in the interest of the Subsidiary but take their orders from the Alter Ego Defendants in the latter's interest.



Filing of
Steele Chaffee

25

121.    Thus, the Alter Ego Defendants used the corporate cloak of the Subsidiary as a subterfuge to defeat public convenience, to justify a wrong, and/or to perpetrate a fraud in that the Alter Ego Defendants' complete control and domination of the Subsidiary depleted all the Subsidiary's assets, thereby making it unable to pay a judgment resulting from its care of residents including Resident.

122.    This undercapitalization and understaffing violated NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC's duties under 19 C.S.R. § 30-85.042 and the applicable standard of care owed by a nursing home operator or manager to NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC's residents.

123.    As a direct and proximate result of the individual and collective acts of negligence of the Subsidiary – and the Alter Ego Defendants – Resident was harmed and suffered pain, suffering, mental anguish, and medical expenses.

WHEREFORE, Plaintiff, prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable under the circumstances.

### Count III - (Negligence Claim Against All Defendants)

124.    Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

125.    At all times material hereto Resident was in a defenseless and dependent condition.

126.    As a result of Resident's defenseless and dependent condition, Resident relied upon Defendants to provide for their safety, protection, care and treatment.



*Filing of*
*Steele Chaffee*

26

127.    At the time of the negligent acts and occurrences complained of herein and at all other times relevant hereto, Defendants, and their agents and employees, owed a legal duty to Resident to exercise that degree of skill and learning ordinarily exercised by members of their respective professions under the same or similar circumstances.

128.    At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing Facility.

129.    These duties required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Resident.

130.    These duties required Defendants to have sufficient and qualified staff at the Facility to ensure the proper care for, and treatment of all residents including Resident.

131.    These duties required Defendants to ensure that the Facility's nurses and other staff were properly educated and trained regarding the care for, and treatment of all residents including Resident.

132.    These duties required Defendants to ensure that the Facility was properly capitalized to ensure the proper care for, and treatment of all residents including Resident.

133.    Specifically, during their care and treatment of Resident, Defendants and their agents, servants, and/or employees breached their duties and were guilty of the following acts of negligence and carelessly by failing to measure up to the requisite standard of care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including by:


*Filing of*
*Steele Chaffee*

27

a. Failing to adequately assess, monitor, document, treat, and respond to Resident's physical condition as well as Resident's skin condition;

b. Failing to adequately assess Resident's risk of developing skin breakdown and pressure ulcers;

c. Failing to have enough staff at the Facility to ensure Resident's needs were being met regarding skin care and pressure ulcer prevention;

d. Failing to provide adequate assistive devices and interventions to prevent Resident's skin breakdown and pressure ulcers;

e. Failing to enact and carry out an adequate Care Plan regarding Resident's increased risk for skin breakdown and pressure ulcers;

f. Failing to provide adequate preventative skin care to Resident;

g. Failing to provide adequate assistance and assistive devices to prevent Resident's skin breakdown and pressure ulcers;

h. Failing to appropriately assess and maintain clean and dry skin where Resident developed a pressure ulcer;

i. Failing to turn and reposition Resident every two (2) hours;

j. Failing to utilize proper procedures for scheduling of turning and repositioning;

k. Failing to adequately assess, monitor, ensure, and document the administration of adequate nutrition and hydration to Resident;

l. Failing to adequately and concisely document the measurement of Resident's wounds for proper and efficient wound treatment, management, and progression;

m. Failing to prevent the development and worsening of Resident's pressure ulcers;

n. Failing to adequately, timely and consistently prevent, assess, and treat Resident's pressure ulcer;

o. Failing to have and/or implement appropriate policies and procedures regarding the prevention, assessment, and treatment of pressures ulcers in residents like Resident;

p. Failing to carry out and follow standing orders, instructions and protocol regarding the prevention of Resident's skin breakdown and pressure ulcers;

q. Failing to ensure the nursing home was properly capitalized.

r. Failing to timely transfer Resident to a Facility that could provide adequate care;


*Filing of*
*Steele Chaffee*

28

s.  Failing to properly supervise and train the employees, agents and/or servants of the Defendants who were responsible for the care and treatment of Resident;

t.  Failing to ensure the behavioral facilities was properly capitalized.

u.  Failing to perform and measure up to the requisite standards of care required and observed by health care providers and further particulars presently unknown to Plaintiff, but which is verily believed and alleged will be disclosed upon proper discovery procedures during this litigation.

134.  As a direct and proximate result of the Defendants' acts resulting in an understaffed and undercapitalized nursing home while Resident was at NHC HEALTHCARE-SPRINGFIELD MISSOURI LLC, Resident was harmed and suffered pain, suffering, mental anguish, and medical expenses.

WHEREFORE, Plaintiff, prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable under the circumstances.

<u>PLAINTIFF'S DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE</u>



Respectfully Submitted,

STEELE CHAFFEE, LLC

By:   */s/ Jonathan Steele*
Jonathan Steele  MO #63266
2345 Grand Boulevard, Suite 750
Kansas City, MO 64108
Ph: (816) 466-5947
Fax: (913) 416-9425
jonathan@nursinghomeabuselaw.com

ATTORNEYS FOR PLAINTIFF

